UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSHUA PRIEUR,

        Plaintiff,                       Civil Case No. 15-12547
                                                 Honorable Linda V. Parker

v.

ACUITY,

        Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

This diversity jurisdiction action arises from Plaintiff's claim for Michigan workers' compensation benefits and Defendant's request during the processing of the claim that Plaintiff attend an independent medical examination ("IME").[1]  In

---

[1] Plaintiff is a citizen of Michigan.  (ECF No. 1 ¶ 1.)  Defendant is a citizen of Wisconsin.  (*Id.*)  Plaintiff alleges that he suffered damages over $75,000.  (*Id.*)  The Sixth Circuit has instructed that "[i]n determining whether a claim's value exceeds $75,000, we use the plaintiff's alleged amount unless 'it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed.' " *Ozormoor v. T-Mobile USA, Inc.*, 354 F. App'x 972, 973 (6th Cir. 2009) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 298 (1938) ("the sum claimed by the plaintiff controls if the claim is apparently made in good faith.")).  Such "legal certainty" generally is found "only when state law categorically bars the plaintiff from recovering the necessary amount.  *Id.* (citing *Kovacs v. Chesley*, 406 F.3d 393, 395-97 (6th Cir. 2005)).  Therefore, courts have found jurisdiction even where the damages claimed appear to be overstated.  *Id.* at 974 (citing cases).  In his Complaint, Plaintiff claims that he suffered "mental anguish, outrage at loss of liberty, emotional distress, [and] loss of workers' compensation benefits" due to (Cont'd . . .)

his Complaint, filed July 17, 2015, Plaintiff alleges that Defendant twice committed the tort of false imprisonment by requiring him to attend an IME or risk losing his workers' compensation benefits.[2] Presently before the Court is Defendant's motion to dismiss, filed pursuant to Federal Rule of Civil Procedure 12(b)(6) on August 13, 2015. The motion has been fully briefed. The Court finds the facts and legal arguments sufficiently presented in the parties' pleadings and therefore is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f). For the reasons that follow, the Court is granting Defendant's motion.

---

Defendant's wrongful conduct. (ECF No. 1 ¶ 10.) This Court has found no authority suggesting that Plaintiff would be precluded from recovering more than $75,000 on his claim under Michigan law.

[2] Plaintiff's Complaint includes three "counts." The first count alleges false imprisonment. The second count seeks class action status, injunctive relief and declaratory relief. The parties stipulated to the dismissal of this count on August 13, 2015. (ECF No. 6.) In his last count, labeled "RICO Complaint," Plaintiff acknowledges the Sixth Circuit's holding in *Jackson v. Sedgwick Claims Management Services*, 731 F.3d 556 (2013), *cert. denied*, 134 S. Ct. 2133 (2014), that racketeering activity leading to a loss or reduction of workers' compensation benefits does not constitute the type of injury that will support a RICO claim. (*See* ECF No. 1 ¶ 15.) Nevertheless, Plaintiff indicates that "[i]f the Sixth Circuit or Supreme Court decide that *Jackson* was wrongfully decided," he should be deemed to be asserting a RICO claim against Defendant. (*Id.*) The better practice would be for Plaintiff to seek leave to amend his complaint to add a RICO claim if such a claim becomes viable in the future.

2

I.  **Applicable Standard**

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . .." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption, however, is not applicable to legal conclusions. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

## II. Factual Background

According to Plaintiff's Complaint, he suffered traumatic brain injury in a work-related accident and his employer was insured for Michigan workers' compensation benefits by Defendant. (ECF No. 1 ¶¶ 2, 3.) Plaintiff alleges that Defendant sent letters to Plaintiff on October 8, 2013 and November 13, 2013, requesting that he submit to an examination by psychologist Dr. Rhonda Levy-Larson on November 13 and 26, 2013. (*Id*. ¶ 6.) The letters advised Plaintiff: "Your failure to appear for this examination could substantially affect your right to workers' compensation benefits." (*Id*.) Plaintiff alleges that Defendant routinely uses such language when requesting that claimants undergo examinations. (*Id*. ¶ 5.)

Michigan's Workers' Disability Compensation Act provides that if a claimant refuses to submit to or obstructs an employer's or carrier's requested examination of the claimant by a physician or surgeon, the claimant's right to

4

compensation will be suspended and, during the period of suspension, may be forfeited. Mich. Comp. Laws § 418.385. Plaintiff contends that Dr. Levy-Larson is not a physician or surgeon authorized to practice medicine under the laws of Michigan. (ECF No. 1 ¶ 9.)

Plaintiff submitted to the examinations with Dr. Levy-Larson on November 13, and 26, 2013. (*Id*. ¶ 7.) Plaintiff alleges that "[t]he first examination was so stressful to [him] that he left during the examination." (*Id*. ¶ 10.) He claims that both examinations inflicted "mental anguish, outrage at loss of liberty, emotional distress, loss of workers' compensation benefits and other damages." (*Id*.)

### III. Applicable Law and Analysis

False imprisonment under Michigan law requires: " '[1] an act committed with the intention of confining another, [2] the act directly or indirectly results in such confinement, and [3] the person confined is conscious of his confinement.' " *Moore v. City of Detroit*, 652 N.W.2d 688, 691 (Mich. Ct. App. 2002) (quoting *Adams v. Nat'l Bank of Detroit*, 508 N.W.2d 464, 468 (Mich. 1982)). Defendant argues that Plaintiff fails to state a viable false imprisonment claim because he was free to leave the IMEs with Dr. Levy-Larson and therefore, by definition, was not "imprisoned" under Michigan law. (ECF No. 5 at Pg ID 22, citing *Moore*, 652 N.W.2d at 690-91.) In response, Plaintiff contends "that false imprisonment exists where a person is physically free to move but financial coercion makes him stay

put, or, as in the case of [Plaintiff], go and submit to a lengthy psychological examination." (ECF No. 7 at Pg ID 53.) In other words, Plaintiff claims that his fear of losing his workers' compensation benefits caused him to attend the IMEs and this coercion amounted to an impermissible imprisonment.

In support of his argument, Plaintiff relies on two cases: *Lavey v. Mills*, 639 N.W.2d 261 (Mich. Ct. App. 2001) and *Clarke v. K Mart Corporation*, 495 N.W.2d 820 (Mich. Ct. App. 1992) (per curiam). *Lavey* has no relevance here. *Lavey* involved a severely disabled child whose conservator claimed the child was falsely imprisoned when the defendants, suspecting the child of being the victim of sexual abuse, brought her for a gynecological examination without first obtaining parental consent or a court order. 639 N.W.2d at 263-64. The Michigan Court of Appeals, however, never decided whether the facts supported a claim of false imprisonment. *Id*. at 268 (declining to address the defendants' argument that they were entitled to summary disposition on the plaintiff's false imprisonment claim because the trial court neither considered nor decided the issue, having granting summary disposition instead based on statutory immunity). Instead, the court was presented only with the issue of whether the defendants were entitled to statutory immunity from this claim under Michigan's Child Protection Law, Mich. Comp. Laws § 722.625. *Id*. at 267. The Michigan Court of Appeals did address whether

6

the defendant's conduct could support a false imprisonment claim in *Clarke*, however.

In *Clarke*, the plaintiff was shopping at the defendant's store and after checking out was stopped by two store supervisors. 495 N.W.2d at 821. One of the supervisors had seen part of the cashier's transaction of the sale, which led the supervisor to believe that the cashier or the plaintiff had engaged in wrongdoing. *Id*. at 821-22. When they stopped the plaintiff, one of the supervisors snatched the bag holding the plaintiff's purchases, worth $250.00. *Id*. The plaintiff was told this was a routine package check and she was detained for about ten or fifteen minutes while the items in the bag were matched with her receipt. *Id*. at 821. The plaintiff subsequently brought a lawsuit against the store alleging, inter alia, false imprisonment.

The Michigan trial court granted the defendant's motion for summary disposition with respect to the plaintiff's false imprisonment claim, reasoning that there was no restriction on the plaintiff's freedom of movement. *Id*. at 822. The plaintiff was neither "arrested nor detained in an office, she was free to roam through the store, and in fact was free to leave if she wished to do so." *Id*. Although finding these observations "technically accurate," the Michigan Court of Appeals reversed the trial court's decision, concluding that the lower court's

"holding rest[ed] on an unduly narrow view of [the false imprisonment] tort." *Id.* at 822-23.

The appellate court explained that while " '[f]alse imprisonment is the unlawful restraint of an individual's personal liberty or freedom of locomotion[,]' " *id*. at 823 (quoting *Stowers v. Wolodzko*, 191 N.W.2d 355, 363 (Mich. 1971)), " 'manual seizure is not necessary.' " *Id.* (quoting *Tumbarella v. Kroger Co.*, 271 N.W.2d 284, 288 (Mich. Ct. App. 1978)) (additional quotation marks and citation omitted). Instead, there need only be "some form of personal coercion." *Id*. The court turned to one example of "personal coercion" set forth in the Restatement of Torts:

> "A, the owner of a store, for the purpose of preventing B, a customer, from leaving the store, but without any privilege to do so, seizes and retains B's purse, which contains a large sum of money. B reasonably believes that she can leave the store only at the risk of losing the purse and the money, and therefore remains in the store. A has confined B."

*Id*. at 823 (brackets omitted) (quoting 1 Restatement Torts 2d, § 40A at 61).

The *Clarke* court apparently concluded that the withholding of the plaintiff's $250 worth of merchandise constituted coercion, forcing the plaintiff to remain in the store. The court pointed out, however, "there is no false arrest if the plaintiff voluntarily agrees to stay with the defendant." *Id.* (citing *Bonkowski v. Arlan's Dep't Store*, 174 N.W.2d 765 (Mich. 1970) (the plaintiff returned to the store and agreed to an inspection of her purse upon a security guard's request); *Bruce v.*

8

*Meijers Supermarkets, Inc.*, 191 N.W.2d 132 (Mich. Ct. App. 1971) (the plaintiff voluntarily submitted to a search but, additionally, there was probable cause for her detention)). As the Michigan Supreme Court has explained:

> "There can be no such thing as an action for false imprisonment where the plaintiff has not been arrested; and while, as has been held, manual seizure is not necessary, there must be *that, or its equivalent*, in some sort of personal coercion."

*Bonkowski*, 174 N.W.2d at 771 (emphasis added) (quoting *Hill v. Taylor*, 15 N.W. 899, 900 (Mich. 1883)). In other words, the defendant's actions must have somehow constrained the plaintiff's "liberty or freedom of movement." *Tumbarella*, 271 N.W.2d at 287 (citing *Stowers*, 191 N.W.2d at 363) (additional citation omitted).

Plaintiff claims that, like the plaintiff in *Clarke* and the customer in the Restatement of Torts' example, he was financially coerced to attend the IMEs with Dr. Levy-Larson. Plaintiff relies on the indication in Defendant's letters to him that that "[his] failure to appear for this examination could substantially affect [his] right to workers' compensation benefits." There are several problems with Plaintiff's argument, however.

First, unlike the defendant in *Clarke* and the store owner in the Restatement example, Defendant did not seize anything of value which belonged to Plaintiff to force him to subject to the IMEs. Notably, Defendant did not advise Plaintiff that he *would* lose his right to benefits if he failed to appear for the IMEs; Defendant

9

indicated that he *could* lose his right to benefits. Second, "financial coercion" is not sufficient on its own to state a viable false imprisonment claim. False imprisonment requires a "restraint of [the] individual's personal liberty or freedom of locomotion." *Clarke, supra*. In *Clarke* and the Restatement of Torts example, an individual was confined to stay in one place, although not through physical force, by the coercive conduct of the store's agents or owner. Plaintiff, in comparison, was asked to appear at an examination with Dr. Levy-Larson. His actions are more akin to those of the plaintiff in *Bonkowski*, where the Michigan court found no false imprisonment because the plaintiff voluntarily agreed to stay with the defendant at its agent's request. Notably, although appearing for the first IME, Plaintiff left during the examination. This undermines any claim that he was "confined," as required for a false imprisonment claim.

Additionally, Plaintiff fails to cite to any Michigan case suggesting that Defendant's conduct constituted false imprisonment or even "financial coercion." The Court's independent research uncovered no such case and none of the cases citing *Clarke* involve a scenario analogous to that case or the one now before the Court. In fact, none of the cases citing *Clarke* discuss the concept of "financial coercion" generally, or in support of a false imprisonment claim, specifically.

Finally, it unlikely that the Michigan courts would find conduct like Defendant's sufficient to support a false imprisonment claim. A finding that the

"coercion" asserted here constituted false imprisonment would mean that an insurance carrier violates the law anytime it requests verification of claim by requiring the claimant to undergo examination by someone other than a physician or surgeon licensed to practice medicine under the laws of the state-- whether it be a physical or mental examination or an examination under oath or deposition.

The Court therefore concludes that Plaintiff's allegations of false imprisonment fail to state a claim on which relief may be granted.

Accordingly,

**IT IS ORDERED**, that Defendant's motion to dismiss is **GRANTED**.

> s/ Linda V. Parker
> LINDA V. PARKER
> U.S. DISTRICT JUDGE

Dated: November 3, 2015

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, November 3, 2015, by electronic and/or U.S. First Class mail.

> s/ Richard Loury
> Case Manager